UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STEPHEN RUSSELL,

    Plaintiff,

v.

RYAN MICHELETTI, et al.,

    Defendants.

Case No. 18-cv-06691-RS

**ORDER DENYING PARTIAL MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION[1]

Thinking he was in danger as a result of his business dealings in Russia and Ukraine, Plaintiff Stephen Russell ("Plaintiff") hired various security personnel to ensure his safety. Plaintiff met with Defendant Ryan Micheletti in late 2017 and eventually hired Micheletti and the company he owned, Legion Industries, Inc., d/b/a/ Shield Corps Security (together, "Moving Defendants") in February of 2018 for security consulting services, which included a security assessment for the client's protection and risk mitigation, and negotiation for third-party, subcontracted protection services. The contract between Plaintiff and Moving Defendants had a term from February 9, 2018 to February 28, 2018, but would "automatically renew itself" on a weekly basis, subject to termination in writing with 24-hour notice. *See* Dkt. 288, Exhibit A – Security Consulting Agreement ("SCA"). Plaintiff also hired George Akkelquist, a self-described

---

[1] Familiarity with the factual and procedural background, which was set forth in detail in the prior Order Granting Motions for Summary Judgment, Dkt. 261, is presumed. As such, only a brief recitation of those matters pertinent to resolution of the instant motion are recited herein.

expert in Countering Violent Extremists, and Nir Maman, a former high-ranking Mossad officer who was described as Akkelquist's right-hand man, after being introduced by Micheletti.

Plaintiff eventually became dissatisfied, however, suspecting that he was being bamboozled: over the course of a few months, Plaintiff had spent nearly two million dollars on security services, and a dispute arose between Plaintiff and Defendant Maman regarding an allegedly unauthorized wire transfer of a million dollars. Plaintiff then brought suit against Moving Defendants and the others he had hired—Akkelquist, Maman and the companies they each owned (altogether, "Defendants")—alleging 10 claims of relief, ranging from RICO to breach of contract to unfair business practices.

Of present concern is a motion for summary judgment brought by Moving Defendants on Plaintiff's first, fifth, sixth, seventh, and ninth claims for relief (RICO, breach of contract, unjust enrichment, common count, and UCL, respectively). For the reasons that follow, the motion for summary judgment on those claims is denied.[2]

## II. LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses[.]" *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323 (internal quotation marks omitted). If it meets this burden, the moving

---

[2] In a repeat offense, the Parties again each provided a table of "undisputed facts" along with their briefs. Both Parties also failed to adhere to Local Rule 3-4(c), regarding the general requirements for any papers presented for filing. Though failure to comply with the Local Rules was waived in the previous motion for summary judgment, such repeated violations will not be entertained, particularly as all Parties in the case were on notice. Accordingly, the tables were not considered in the adjudication of this motion, and counsel are again warned that future violations will not be countenanced, and will be subject to sanction.

1   party is then entitled to judgment as a matter of law when the non-moving party fails to make a

2   sufficient showing on an essential element of the case with respect to which it bears the burden of

3   proof at trial. *Id.* at 322-23.

4       To preclude the entry of summary judgment, the non-moving party must bring forth

5   material facts—that is, "facts that might affect the outcome of the suit under the governing law[.]"

6   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The opposing party "must do more

7   than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec.*

8   *Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). The trial court must "draw all justifiable

9   inferences in favor of the nonmoving party, including questions of credibility and of the weight to

10  be accorded particular evidence." *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 520 (1991)

11  (citing *Anderson*, 477 U.S. at 255). "Where the record taken as a whole could not lead a rational

12  trier of fact to find for the non-moving party," however, "there is no 'genuine issue for trial.'"

13  *Matsushita*, 475 U.S. at 587.

### III. DISCUSSION

#### A. First Claim for Relief: RICO Claim (18 U.S.C. §§ 1961 *et seq.*)

16      In order to prevail on a RICO claim pursuant to 18 U.S.C. § 1962(c), a plaintiff must

17  prove: "(1) the conduct of (2) an enterprise that affected interstate commerce (3) through a pattern

18  (4) of racketeering activity or collection of unlawful debt, . . . [and] the conduct must [have]

19  be[en] (5) the proximate cause of harm to the victim." *Eclectic Props. E., LLC v. Marcus &*

20  *Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014).

21      Moving Defendants argue summary judgment is warranted on Plaintiff's RICO claim as a

22  result of four deficiencies: (1) Moving Defendants did not have any part in the operation or

23  management of the enterprise itself, thereby failing the first conduct element; (2) Moving

24  Defendants were not a continuing unit with other Defendants, thereby failing to constitute an

25  association-in-fact enterprise; (3) Plaintiff has not proven two predicate acts, thereby failing to

26  satisfy the "pattern of racketeering activity"; and (4) Moving Defendants had no knowledge of any

27  scheme, and therefore could not have agreed to further any such alleged scheme.

1. Conduct

In order "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs" pursuant to § 1962(c), "one must participate in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993). According to Moving Defendants, "Micheletti's role was limited to logistics" and he had no personal knowledge of the threats against Plaintiff, Dkt. 288 at 8; and Legion was "to provide security consult services only," but its interactions with Plaintiff were "short-lived" because soon after sub-contracting with CT707, Plaintiff "dealt directly with CT707" and "Legion was not involved." *Id.*

*Reves* fails to be dispositive of the issue. Though the case affirmed summary judgment dismissing a RICO claim against an outside accounting firm, the scope of conduct alleged is distinguishable. The accounting firm's involvement was entirely "limited to the audits" and presentations and explanations of said audits. *Arthur Young & Co. v. Reves*, 937 F.2d 1310, 1324 (8th Cir. 1991). Defendants' conduct, however, cannot be said to be so circumscribed. Defendant Micheletti had a role in bringing together the alleged participants of the enterprise—such as Micheletti's role in referring Plaintiff to Mr. Akkelquist and Mr. Maman, or Legion's role in subcontracting with CT707. In addition to serving as the alleged "architect" of the enterprise, Plaintiff also claims that all Defendants were required to operate through Legion's license and insurance, and identifies evidence in the record that Micheletti's activities expanded beyond mere logistics to investigation and other direction and delegation. *See* Dkt. 293 at 2-3. Viewing the evidence in the light most favorable to the nonmoving party,[3] these would constitute some of the ways in which Moving Defendants might have "exert[ed] control over [the enterprise]," *Reves*, 507 U.S. at 184, and were "indispensable to achievement of the enterprise's goal." *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008).

---

[3] The alternate explanations that Moving Defendants proffer—that Micheletti did not convince Plaintiff he was in danger in the first place, or that Micheletti made the referrals only because of his lack of experience and not any nefarious aim, and only relied on other Defendants—are either irrelevant or improper to credit over plausible competing evidence from Plaintiff at this stage.

2. Enterprise

Responding to Plaintiff's allegation of an "association-in-fact" enterprise that includes "Maman, Akkelquist, Micheletti, CT 707, DFW MTA, Shield, and Legion," Dkt. 93 at 18, Moving Defendants next argue that Plaintiff has failed to show an enterprise, the second required element of a RICO claim, as Akkelquist, Maman, and Micheletti "did not function as a continuing unit." Dkt. 288 at 9. In support, they claim Plaintiff ceased working with Micheletti in late March 2018, when Plaintiff contracted directly with Maman, over which Moving Defendants had no control or involvement.

An association-in-fact enterprise is established where a plaintiff alleges (1) a common purpose of engaging in a course of conduct; (2) an ongoing organization, either formal or informal; and (3) facts that the associates function as a continuing unit. *Odom v. Microsoft Corp.*, 486 F.3d 541, 552-53 (9th Cir. 2007). As Plaintiff correctly notes, the relevant question for the third requirement of a "continuing unit" is "whether the associates' behavior was 'ongoing' rather than isolated activity," *Odom*, 486 F.3d at 553 (citation omitted), and whether there was sufficient "longevity necessary to accomplish the purpose." *Eclectic Props.*, 751 F.3d at 997 (citation omitted). As a result, "[c]ourts often look to the length of time that the associates have interacted to determine whether they functioned as a continuing unit." *Hopkins v. Am. Home Mortg. Servicing, Inc.*, No. 13-4447 RS, 2014 WL 580769, at *5 (N.D. Cal. Feb. 13, 2014); *see also Boyle v. United States*, 556 U.S. 938, 946 (2009) ("[A]n 'enterprise' must have some longevity, since the . . . provision demands proof that the enterprise had 'affairs' of sufficient duration to permit an associate to 'participate' in those affairs through 'a pattern of racketeering activity.'").

Although Moving Defendants insist that each of the individual Defendants had their own independent contracts with Plaintiff, Micheletti himself explains that "even though [Maman and Akkelquist] had separate agreements with [Plaintiff] later on, . . . we really saw this as a team effort." Micheletti Dep. Tr. at 182:20-22; *see also* Akkelquist Dep. Tr. 189:13-15 (agreeing that one of Akkelquist's "goals from the beginning was to operate as a team"); *id.* at 187:20-189:9 (testimony that Micheletti contacted Akkelquist after Plaintiff fired him in order to "try to make

things not fall apart to the betterment of everyone . . ." and arguing that "*we* [Akkelquist, Maman, and Micheletti] shouldn't leave [Plaintiff] hanging"); *id.* at 23:9-13 (noting that Micheletti "wanted to be . . . a mediator" and try to resolve the dispute between Defendants and Plaintiff). Further circumstantial evidence also shows that, rather than operating independently, Micheletti would frequently communicate and work together with Akkelquist and Maman on specific issues. *See* Maman Dep. Tr. at 114:18-25 ("February 1st I received panicked calls from, I believe, both George and Ryan telling me that Russel just fired – terminated his protection detail. We're not starting tomorrow; we're starting today. Get your detail on him right now. So we raced to get that done.").

Moreover, as to the timing, there is evidence that Micheletti was involved not only for the three-month period ("from late January 2018 to approximately April 1, 2018") that Moving Defendants acknowledge they officially worked for Plaintiff, Dkt. 288 at 9, but also in various meetings that extended past the beginning of April. Though not as long as the two years of conduct alleged in *Odom*, 486 F.3d at 553, a period of some months is sufficient to withstand summary judgment on the issue, and Moving Defendants cite no authority to the contrary. *Cf. Young v. Schultz*, No. 22-CV-05203-TSH, 2023 WL 1784758, at *4 (N.D. Cal. Feb. 6, 2023) (dismissing RICO claim because "one week of arguable collective action cannot plausibly support an ongoing organization"). In light of this evidence, Moving Defendants' arguments that they were not aware of the specifics of others' tasks is insufficient to meet their burden.

3. Pattern of Racketeering Activity

Moving Defendants next argue Plaintiff's RICO claim fails for a failure to establish a "pattern of racketeering activity"—which requires "at least two acts of racketeering activity" as defined in 18 U.S.C. § 1961(1) within a span of 10 years, 18 U.S.C. § 1961(5)—because they "have not engaged in any conduct that could be viewed as a threat of future criminal action." Dkt. 288 at 10. In support, they repeat their allegations that Micheletti's role was limited to logistics, Micheletti did not have personal knowledge of the threats against Plaintiff, nor did he work with other Defendants in the case prior to 2018 or since October 2018. On these facts, Moving

Defendants also argue that Plaintiff cannot prove they knowingly agreed to facilitate a RICO scheme, and are being unjustly associated with the crimes of others.

These arguments fail to persuade. First, Plaintiff's Complaint alleges five predicate acts against all Defendants in the case, only two of which Moving Defendants dispute.[4] Having thereby waived their argument about the other three, summary judgment on the RICO claim for failure to allege sufficient predicate acts necessarily fails.

Second, with respect to Moving Defendants' arguments about the two predicate acts actually challenged, they have not proven that Plaintiff has failed to advance either extortion or wire fraud. 18 U.S.C. § 1951 makes it a crime for anyone who "obstructs, delays, or affects commerce […] by robbery or extortion," where extortion means to obtain property from another individual with their consent, "induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). Moving Defendants argue that they cannot be guilty of extortion, since Plaintiff's fears and belief in the threat preexisted their involvement.

Though Defendants may not have created Plaintiff's fear in the first instance, their entertainment of that fear—especially notwithstanding their admitted, complete ignorance of any actual threats facing Plaintiff—wrongfully capitalizes on, and uses, that fear. As Plaintiff argues, "[d]espite having no basis whatsoever to conclude that there were threats against [Plaintiff] . . . , defendants continued to reinforce in [Plaintiff's] mind that the threats were real"—including, by example, changing a text message from "solid information confirming the threat" to read "We continue to receive alarming reports through the intelligence network about the characters we've been investigating." Dkt. 293 at 8; Micheletti Dep. Tr. at 24:19-25:8; 26:4-17. There are ample examples of Micheletti's conduct that, further bolstered by evidence about Defendants' secretive operations and their knowledge of Plaintiff's wealth and personal background, *see* Akkelquist

---

[4] Defendants contest only the claims of Interference of Commerce by Extortion under 18 U.S.C. § 1951 and Wire Fraud under 18 U.S.C. § 1343.

Dep. Tr. at 58:21-59:5 (Micheletti texting Akkelquist that "it turns out [Plaintiff] was one of the first investors in Uber and has made a good amount of money"), raise genuine disputes about material facts relevant to the claim. Contrary to Moving Defendants' argument, preying on an existing fear is not grounds for exoneration, *see, e.g.*, *United States v. Lisinski*, 728 F.2d 887, 891 (7th Cir. 1984) ("[T]he exploitation of the victim's reasonable fear constitutes extortion regardless of whether or not the defendant was responsible for creating that fear and despite the absence of any direct threats.") (citations omitted), and movants are not entitled to judgment as a matter of law on the extortion claim.

With respect to mail and wire fraud,[5] the elements are "(1) the existence of a scheme to defraud; (2) the use of wire, radio, or television to further the scheme; and (3) a specific intent to defraud." *United States v. Jinian*, 725 F.3d 954, 960 (9th Cir. 2013). Moving Defendants argue Plaintiff is unable to show the third—a specific intent to defraud. In particular, they reiterate the claim that Micheletti did not have a background in security services—and therefore "had no reason to doubt" Akkelquist and Maman, to whom he referred Plaintiff on account of the "high praise by mutual connections he trusted," and on whom he relied. Dkt. 288 at 12-13.

As the Ninth Circuit has explained: "Generally, scienter should *not* be resolved by summary judgment." *Provenz v. Miller*, 102 F.3d 1478, 1489 (9th Cir. 1996). Indeed, "[c]ases where intent is a primary issue generally are inappropriate for summary judgment unless *all* reasonable inferences that could be drawn from the evidence defeat the plaintiff's claim." *Id.* (citation omitted). In light of all the evidence discussed above, Moving Defendants are far from meeting this burden of showing that there could be no reasonable inference that they made false statements to Plaintiff with the intent to defraud him. Without even needing to delve into Plaintiff's argument that Moving Defendants might be vicariously liable for wire fraud for the

---

[5] Though Defendants only explicitly attack wire fraud, rather than mail fraud, because Plaintiff's Complaint alleged mail and wire fraud together, and the argument that there was no specific intent to defraud can be equally applied to mail fraud, Defendants' argument will be construed as applying its argument to both 18 U.S.C. § 1341 and 18 U.S.C. § 1343.

other Defendants' actions, therefore, summary judgment on Plaintiff's claims of mail and wire fraud is denied.

Finally, Plaintiff correctly notes that the agreement to facilitate the RICO scheme is a requirement under § 1962(d), and Moving Defendants have both misinterpreted and thereby misrepresented the cases they cite. *See, e.g.*, *United States v. Fernandez*, 388 F.3d 1199, 1230 (9th Cir. 2004) ("Under this test, a defendant is guilty of conspiracy to violate § 1962(c) if the evidence showed that she 'knowingly agree[d] to facilitate a scheme which includes the operation or management of a RICO enterprise.'") (quoting *Smith v. Berg*, 247 F.3d 532, 538 (3d Cir. 2001)).

Accordingly, the motion for summary judgment on Plaintiff's RICO claim is denied.

**B. Fifth Claim for Relief: Breach of Contract**

Moving Defendants claim that Plaintiff: (1) has failed to produce evidence of breach, as they fulfilled their obligations; (2) cannot identify any damages in connection with the agreement; and (3) cannot defeat the limitation of liability included in the contract.

Moving Defendants claim they performed according to the contract by providing security-consulting services, a security assessment, and negotiations for third-party, subcontracted protection services. Plaintiff's claim is, however, that such services were rendered *in name only*—that the security assessment provided, for example, was actually worthless on account of Moving Defendants' admitted total ignorance of the actual facts underlying the credibility of the threat. In response to Plaintiff's argument that Moving Defendants' actions thereby violated the duty of good faith and fair dealing—inherent in every contract—their only response is that they did not act in bad faith, because they had a reasonable basis to believe the information they received.

A doctrine that is "aimed at making effective the agreement's promises," the duty of good faith and fair dealing "imposes upon each party the obligation to do everything that the contract presupposes they will do to accomplish its purpose." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1393 (1990) (cleaned up). Whether Moving Defendants' contractual obligation to provide services, such as a security assessment, necessitated at least some bare minimum of verification of the supposed threat is an issue on which there is genuine dispute.

Given the evidence in the record, summary judgment on this claim is inappropriate. This is also true of Moving Defendants' claim that Plaintiff is unable to identify damages, in light of the considerable sum of money that Plaintiff paid for the services described in the contract.

Their remaining argument, that Plaintiff's claim is precluded by the Limitation of Liability for Loss provision, also fails to persuade. That section reads as follows:

> 6.1 The parties acknowledge that LEGION INDUSTRIES has been retained to provide consulting services to Client as a deterrent against loss and/or damage from criminal and/or other prohibited acts and not as an insurer against all or any such loss or damage.
>
> 6.2 Client acknowledges and agrees that LEGION INDUSTRIES is making no guarantee or warranty – either expressed or implied – that its consulting services will absolutely avert and/or prevent all or any loss or damage.
>
> 6.3 Client agrees that it will hold harmless and indemnify LEGION INDUSTRIES, its employees, officers, subcontractors, agents and assignees, against all losses and damages to the suffered by Client [*sic*] or any third party as the result of ordinary negligence and/or any and all occurrences beyond LEGION INDUSTRIES's reasonable control.

SCA, Section 6. Moving Defendants explain that Plaintiff accepted the fact that there were no guarantees that consulting services would avert damage; Plaintiff's claims sounding in negligence beyond Legion's reasonable control are barred; and Plaintiff must indemnify and hold Defendants harmless for claimed damages. Yet these arguments misapprehend the limitations as written. The thrust of Sections 6.1 and 6.2 is the limitation on liability arising from any damage that might arise from the threat against which Defendants were hired to detect, assess, and protect against, not Defendants themselves.

As for Section 6.3, Plaintiff's allegations are that the harm suffered from Defendants were within their control. Moving Defendants' arguments about their own ignorance does not clearly establish that their reliance on other Defendants, as well as failure to engage in verification on their own, was "beyond [their] reasonable control." Plaintiff, moreover, also argues certain provisions of the section are unconscionable. With no argument refuting this charge—and given that California law renders limitations provisions unenforceable against claims for fraud or willful injury, *see* Cal. Civ. Code § 1668 ("All contracts which have for their object, directly or indirectly,

ORDER DENYING PARTIAL MOTION FOR SUMMARY JUDGMENT
CASE NO. 18-cv-06691-RS

10

to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law.")— Plaintiff is not incorrect as a matter of law. *See also City of Santa Barbara v. Superior Ct.*, 41 Cal. 4th 747, 763 (2007) ("Any exculpatory clause (even one releasing liability for future ordinary negligence) is unenforceable if it relates to a transaction that adequately . . . 'affects the public interest.'"). Plaintiff's claim for breach of contract therefore survives Moving Defendants' summary judgment motion.

### C. Sixth Claim for Relief: Unjust Enrichment

Moving Defendants seek summary judgment on Plaintiff's unjust enrichment claim on the grounds that California law does not recognize a standalone claim for unjust enrichment, and the claim therefore falls with Plaintiff's breach of contract claim. As noted above, however, Plaintiff's contract claim survives. Moreover, while it is true that "in California, there is not a standalone cause of action for 'unjust enrichment,'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015), "[w]hen a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking restitution.'" *Id.* (quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014)). As Moving Defendants here do not address the substance of the unjust enrichment claim itself, they have no answer for the evidence in the record that could lead to a conclusion that they "received and unjustly retained a benefit at the plaintiff's expense." *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016). Accordingly, Moving Defendants have failed to meet their burden on summary judgment and the claim may proceed, "subject to being folded into other substantive claims upon being further refined." *Effinger v. Ancient Organics LLC*, No. 22-CV-03596-RS, 2023 WL 2214168, at *7 (N.D. Cal. Feb. 24, 2023).

### D. Seventh Claim for Relief: Common Count

Under California law, "[a] common count is not a specific cause of action . . . rather, it is a simplified form of pleading normally used to aver the existence of various forms of monetary indebtedness[.]" *McBride v. Boughton*, 123 Cal. App. 4th 379, 394 (2004). To plead a common

ORDER DENYING PARTIAL MOTION FOR SUMMARY JUDGMENT
CASE NO. 18-cv-06691-RS

11

count, a plaintiff must allege: (1) the statement of indebtedness in a certain sum, (2) the consideration (i.e., goods sold, work done, etc.), and (3) nonpayment. *Farmers Ins. Exch. v. Zerin*, 53 Cal. App. 4th 445, 460 (1997). A cause of action for money had and received is stated if it is alleged the defendant is indebted to the plaintiff in a certain sum for money had and received by the defendant for the use of the plaintiff. *Id.* For example, a California court found a complaint to have effectively stated a cause of action for money had and received where it alleged that plaintiff's contingent fee agreement between his attorney and himself was void for illegality. *Schultz v. Harney*, 27 Cal. App. 4th 1611, 1623 (1994). When a common count is used as an alternative way of seeking the same recovery demanded in a specific claim, and is based on the same facts, it stands or falls with the underlying claim. *McBride*, 123 Cal. App. 4th at 394-95; *see also* Fed. R. Civ. P. 8(d)(2).

Moving Defendants argue Russell has failed to plead an indebtedness for a certain sum sought, as Plaintiff alleges only that he lost over $1.8 million to Defendants, but fails to furnish specifics as to how much each Defendant was paid, and what such payments were for. These arguments are not persuasive, particularly considering Moving Defendants' contentions in the record about the services they rendered, and the evidence that certain Defendants refused to provide a more detailed accounting for the sums they received from Plaintiff. As the common count could serve as an alternative cause of action for the breach of contract or unjust enrichment claims, and Moving Defendants have not explained how their arrangement with Plaintiff qualifies as an open book account that would preclude recovery under *Martini E Ricci Iamino S.P.A. - Consortile Societa Agricola v. Trinity Fruit Sales Co.*, 30 F. Supp. 3d 954, 976 (E.D. Cal. 2014); *see also* Cal. Civ. Proc. Code § 337a (defining "book account"), the motion for summary judgment on the common count fails.

### E.  Ninth Claim for Relief: Unfair Competition Law ("UCL")

Moving Defendants argue they are entitled to summary judgment on Plaintiff's UCL claim because Plaintiff "has not and cannot cite to any unfair, deceptive, untrue, or misleading statement," Dkt. 288 at 17, and because Plaintiff cannot prove he has sustained a pecuniary injury,

as the contract governing the Parties' relationship releases liability precluding Plaintiff from recovering damages.

The UCL "bars 'unfair competition' and defines the term as a 'business act or practice' that is (1) 'fraudulent,' (2) 'unlawful,' or (3) 'unfair.' " *Shaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th 1125, 1135 (2020). "Each is its own independent ground for liability under the unfair competition law, but their unifying and underlying purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." *Id.* (internal quotation marks and citations omitted). To bring a claim under the UCL, a plaintiff must "(1) establish a loss or deprivation of money or property sufficient to quantify as injury in fact, *i.e.*, *economic injury*, and (2) show that the economic injury was the result of, i.e., *caused by*, the unfair business practice." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011); *see also* Cal. Bus. & Prof. Code § 17204.

Moving Defendants' general attacks on Plaintiff's UCL claim are ineffective. The evidence sustaining Plaintiff's other claims for relief, including but not limited to the claims of extortion and fraud, undoubtedly raise a genuine dispute of material fact as to whether Defendants have engaged in conduct that was unfair, deceptive, untrue, or misleading, and could sustain Plaintiff's UCL claim. As to the economic injury, there are "innumerable ways in which economic injury from unfair competition may be shown," and the evidence in the record discussed thus far could support, for example, the theory that Plaintiff might have "surrender[ed] in a transaction more, or acquire in a transaction less, than he or she otherwise would have," or was "required to enter into a transaction, costing money or property, that would otherwise have been unnecessary." *Kwikset*, 51 Cal. 4th at 323. Moving Defendants fail to show, as a matter of law, that no reasonable factfinder could find liability under the UCL from the facts in the record—and therefore summary judgment on this claim is also denied.

## IV. CONCLUSION

For the reasons discussed above, the motion for summary judgment is denied.

**IT IS SO ORDERED**.

Dated: March 23, 2023

_____
RICHARD SEEBORG
Chief United States District Judge